UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| HOUSTON PROFESSIONAL TOWING ASSOCIATION, | § § § § | |
|---|---|---|
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-56 |
| CITY OF HOUSTON, | § § § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER[1]

## I. INTRODUCTION

Before the Court is the defendant's, the City of Houston, Texas ("the City"), motion for summary judgment (Dkt. No. 39), and the plaintiff's, the Houston Professional Towing Association ("HPTA"), response (Dkt. No. 49). In advance of the City's motion, the parties filed an Agreed Stipulation of Facts (Dkt. No. 7) that HPTA disputes. The Court conducted a hearing on the matter and the parties have since supplemented their papers. Now having reviewed the entirety of the parties' documents and the pleadings concerning the City's motion, the Court determines that the motion for summary judgment should be granted.

## II. FACTUAL BACKGROUND

### A. Litigation History

The City and HPTA share an eight-year litigation history in connection with the City's towing ordinance, enacted under the City's SafeClear Program. *See* City of Houston Code of Ordinances, Ch. 8, Art. III, Sec. 8-127. Specifically, this is the third suit concerning HPTA's claim that the towing program, as designed and implemented, violates various federal

---

[1] Certain portions of this Memorandum Opinion and Order are lifted from the Court's Memorandum and Order entered in this case previously [*see* Dkt. No. 20].

constitutional [1st and 14th Amendments] rights enjoyed by HPTA members and that the ordinances are preempted under the Federal Aviation Administration Act ("FAA"). *See* 49 U.S.C. § 14501(c)(1).

Essentially, HPTA claims here, as it has in the two prior suits, that the SafeClear Program causes loss of business for its members, violates various state and federal antitrust laws, and otherwise, constitutes a regulatory taking in violation of state and federal laws. HPTA seeks a permanent injunction and monetary damages. The parties' litigation history is, therefore, relevant.

The first suit was filed by HPTA in 2005, and will be referred to as the SafeClear I suit. *See Houston Professional Towing Ass'n v. City of Houston*, No. H-05-0323, 2005 WL 2121552 (S.D. Tex. Aug. 31, 2005). In that case, the Court enjoined the enforcement of several subsections of the ordinance, § 8-127, on the ground that they were preempted by federal law. As a result, the City amended the ordinance to comply with the Court's Order and proceeded to implement the SafeClear Program. Subsequently, HPTA filed a motion for contempt, claiming that the City violated the spirit of the Court's injunction. That motion proved unsuccessful in March of 2006. As a result, HPTA resorted to the state courts, filing a second suit on or about June 27, 2006.

HTPA's second suit ("SafeClear II"), while primarily focused on state law claims, was removed to federal court based on the federal questions that were apparent by the pleadings. *See Houston Professional Towing Ass'n v. City of Houston*, No. H-06-2174, 2008 WL 1782278 (S.D. Tex. April 16, 2008). There, the Court entered an opinion that the SafeClear Program was sufficiently limited in scope and mission such that it did not violate the FAA and, therefore, the

ordinance was not preempted by the FAA. Other state and federal law claims made by HPTA were also dismissed.

### B. The Current Amended Sections of 8-127

The record shows that § 8-127, the SafeClear Program, has been amended on one occasion since the last suit ended in 2008. That amendment came on May 4, 2011, by Ordinance number 2011-324. While other sections or subsections in Chapter 8, dealing with auto wreckers and storage yards were changed, the relevant changes to § 8-127 are found in subparts (5) and (6), and state the following:

> (5) [T]he tow operator shall tow a stalled vehicle located on shoulder to a safe place off the freeway within one mile from the nearest freeway exit at <u>the rate prescribed and subject to the conditions established in the agreement, provided, however, that if the vehicle owner is unable to pay the tow operator at the time of service, such vehicle shall be towed to the nearest licensed storage facility that is lighted and manned on a 24-hour basis, provides telephone and other access to the vehicle owner, and will not charge any storage-related fees for the first 48 hours;</u>
>
> (6) <u>That</u>, ~~at no cost to the vehicle owner, except that~~ during the period each day from 10:00 p.m. to 6:00 a.m. <u>the tow operator shall tow a stalled</u> ~~such~~ vehicle ~~shall be towed~~ to <u>a safe place in accordance with the agreement. If there is no safe place, the vehicle shall be towed to</u> the nearest licensed storage facility that is lighted <u>and</u> manned on a 24-hour basis, ~~and~~ provides the vehicle owner with access to a telephone and other facilities, <u>and will not charge any storage-related fees for the first 24 hours</u> ~~or other safe place~~; [interlineations and strikeouts part of text of amended Ordinance].

### III. THE CONTENTIONS OF THE PARTIES

#### A. HPTA's Contentions

HPTA contends that its HPTA members are excluded from the SafeClear Program although they hold towing permits. And, because HPTA members are excluded from the program, they lose a substantial portion of the potential revenue generated from the towing and storage of disabled vehicles on freeways within the City of Houston. HPTA members also complain that the amendments to § 8-127, when coupled with or aided by amendments to § 8-117, bring § 8-127 in violation of the Court's previous injunction order and state and federal law and thereby brings the ordinance within the preemption provision of the FAA. The sum of HPTA's argument is that the enactment of a $50 fee for tows to a storage facility, a $20 fee collected at the storage lot, and the redefining of "nearest place of safety" as the nearest licensed storage facility, constitute an economic regulation. HPTA further contends that the reach of these ordinances is far beyond that needed to insure safety on freeways; and damages as a result.

Therefore, HPTA argues that it is entitled to a declaratory judgment and permanent injunction against the City based on: (a) federal preemption; (b) a regulatory taking under state and federal law; and (c) violations of the First Amendment, as HPTA members cannot solicit tows on freeways.

#### B. The City's Contentions

The City does not dispute that, on May 4, 2011, it amended the SafeClear Program, specifically § 8-127. According to the City, the amendment was necessary, in part, because the funding provided by the City for the Program ended and the cost of towing needed to be passed on to the vehicle owner. In its pleadings, the City describes the amendment as follows:

> [The] City Council approved a change in the SafeClear program to
> provide that a SafeClear operator shall tow a stalled vehicle located

> on the shoulder to a safe place off the freeway within one mile from the nearest freeway exit at a cost of $50.00 to be paid by the vehicle owner rather than the City paying for the tow. Roadside Services performed on the freeway would be charged to the vehicle owner at the rate of $30.00. Previously, the City paid for the safety tow and roadside assistance. If the vehicle owner is unable to pay the tow operator, the vehicle is to be towed to the nearest licensed storage facility that is lighted and manned on a 24-hour basis, provides telephone and other access to the vehicle owner. The vehicle owner is not charged for any storage-related fees for the first 48 hours. The vehicle owner is charged for storage-related fees after the first 48 hours. This is the only amendment to the Code of Ordinances, Section 8-127, the provision that governs the SafeClear program, since April 16, 2008, the date of the judgment entered in SafeClear II.

*See* [the City's Motion to Dismiss, Dkt. No. 8, p. 9].

The City contends that the changes made in its Ordinances are not substantive and are consistent with this Court's prior order. Therefore, it argues that HPTA has no right to recover under federal or state law. Because this suit represents HPTA's third suit against the City concerning the SafeClear Program, the City also contends that this suit should be dismissed under the doctrine of *res judicata* or claim preclusion. In this respect, the City points out that the allegations and claims in this third suit are either the same allegations and claims presented in earlier suits or, they are allegations and claims that could or should have been addressed in the prior suits. Therefore, the City asserts that summary judgment is appropriate under Federal Rules of Civil Procedure, Rule 56.

## IV.  STANDARD OF REVIEW

### Motion for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V. DISCUSSION AND ANALYSIS

The City's motion for summary judgment is based primarily on the doctrine of *res judicata* and/or issue preclusion. In order to establish *res judicata*, the City has the burden of establishing that: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior suit; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both cases. *See Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010); *see also Test Masters Educ. Services, Inc.*, 428 F.3d at 571.

HPTA does not dispute that the first three elements of *res judicata* are satisfied. The parties in the suits are the same, the judgment in the prior case was rendered by a court of competent jurisdiction, and final judgments were entered that disposed of the claims of the parties on the merits. HPTA argues, however, that the City has not met the fourth prong of *res judicata* namely, that the same claims or cause of action is involved in the case at bar. In this regard, HPTA asserts that the City's amendments to § 8-127 constitute an interfering or altering of the situation since the last judgments were entered. Essentially, HPTA argues that the amendments provide a new factual predicate for its current claims and, as such, *res judicata* does not apply. As such, the plaintiff argues, the recent amendments, specifically, subparts (5) and (6), constitute economic regulation that is preempted by the FAA.

The City, in its rejoinder, argues that the amendments to the SafeClear Ordinance are not substantive. They simply permit the City to transfer the towing and roadside assistance fees to the owners of the towed vehicles. Because City funding has been exhausted, the tow fee obligation was shifted from the City to the vehicle owner. And considering the fact that a vehicle owner is unable to pay the tow fee, the vehicle must be towed to a "safe place off the

freeway within one mile of the nearest exit." These changes, the City argues, are merely regulations where the City is permitted to engage in traffic safety regulations.

The Court is of the opinion that HPTA's claims do not ring true that the amendments do not increase or expand the City's reach such that they implicate preemption. Therefore, the doctrine of *res* judicata applies. Essentially, these sections and sub-sections prohibit tow operators, without a § 8-127 contract, from towing from freeways unless they are called to the scene by the vehicle owner or a police officer. Therefore, HPTA's claim, that by amending §8-127(5) and (6) the window of opportunity to relitigate other sections of the SafeClear ordinance(s), is unfounded.

The Court defined its concerns regarding the amendments in an earlier Memorandum [Dkt. No. 20]. There, the Court stated that it must "determine whether the political subdivision's regulation is genuinely responsive to safety concerns as that regulation is applied [citations omitted] and second "whether any economic burden suffered by towing companies that are excluded from the SafeClear Program [was] merely incidental." [citation omitted]. The Court now answers both questions in the negative.

The amendments to § 8-127 are not preempted by the FAA. The amendments that were necessary to bring the 2005 Ordinance into compliance were made by the City and those amendments remain unchanged. As well, the Court has previously rejected claims of federal preemption concerning the 2008 amendments. A reading of amendments to § 8-127 reveals that traffic safety is still the City's primary concern. HPTA argues that because fewer vehicles are being towed, more vehicles are now left stranded on freeways. Yet, HPTA members are not permitted to tow the vehicle. Moreover, argues HPTA, the meager tow fee is a problem. The fact that, since the adoption of a $50 tow fee, the number of tows off the Houston freeways has

declined does not establish that the 2011 amendments are not genuinely responsive to traffic safety concerns. The decline in tows, assuming that to be the case, does not mean that thousands of disabled vehicles are left on the freeways and thereby create unsafe traffic situations. A myriad of reasons could account for the decline in tows by SafeClear tow operators. The Court need not speculate on this point, but simply affirms the absence of evidence establishing a genuine fact issue that safety concerns is not at the heart of the amendments.

Concerning the second prong, that HPTA members are suffering an economic burden as excluded towing companies, the Court is of the opinion that § 8-123(e), that directs nonconsent tows to a storage lot, does not impact consent tow. Because the amendment applies only to nonconsent tows, it is exempt under §14501(c)(2)(C). HPTA's primary argument, that the amendments to § 8-127 are not responsive to safety concerns, is that it "leaves tens of thousands of stalled vehicle owners on the freeway. Anecdotal evidence that stalled vehicles are not removed from freeways by an authorized towing company is no evidence that prohibited tow operators suffer greater by exclusion. They are free to handle consent tows where consent originates with the vehicle owner.

The Court, concludes that no additional economic burden is suffered by prohibited tow operators also concludes that HPTA's claim of regulatory taking and claim for damages fail. The Court has previously addressed the issue and nothing new is presented by the claim that the fee set for nonconsent tows is below the cost of providing the services. As well, HPTA's free speech claim also fails on the same basis.

Previously, the Court addressed HPTA's claim of free speech and found no merit. That claim as well as others raised in this suit mirror those previously raised and are, therefore, barred

by the doctrine of *res judicata*. Based on the foregoing analysis and discussion, the Court is of the opinion that summary judgment in behalf of the City is appropriate.

It is so Ordered.

SIGNED on this 18th day of December, 2014.

_____
Kenneth M. Hoyt
United States District Judge